ACCEPTED
03-13-00081-CV
5163833
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/5/2015 4:38:36 PM
JEFFREY D. KYLE
CLERK

No. 03-13-00081-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/5/2015 4:38:36 PM
JEFFREY D. KYLE
Clerk

**IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN, TEXAS**

**TWENTY FIRST CENTURY HOLDINGS, INC. D/B/A AMERICAN GEOTHERMAL
SYSTEMS, INC., VICTOR DEMARCO, AND N. WEST SHORT**

**V.**

**PRECISION GEOTHERMAL DRILLING, L.L.C.**

**FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY,
NO. C-1-CV-12-12503, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING**

**APPELLANT'S MOTION FOR REHEARING**

LEAD COUNSEL:
WEST SHORT & ASSOCIATES, P.C.
N. West Short
State Bar No. 00788407
313 West 10th Street
Georgetown, Texas 78626
512.864.3911
512.864.3966 (Fax)
west.short@westshortlawfirm.com

**ATTORNEYS FOR APPELLANTS**

**ORAL ARGUMENT REQUESTED**

# ISSUES PRESENTED

I. Because the issue of unfairness has not been fully litigated or adjudicated, the September 2012 Settlement Agreement is a valid and enforceable agreement. Thus, the Court cannot unilaterally declare the September 2012 Settlement Agreement unfair and treat it as void by failing to enforce it. Texas Business Organization Code section 101.255 only gives the company or the company's members a cause of action against the "interested governing person" if the company or the company's members believe a contract is not fair. Section 101.255 does not automatically void an unfair contract. Thus, Patricia Denny must assert a cause of action against Victor DeMarco to determine fairness, obtain findings of unfairness, and obtain a judgment declaring the September 2012 Settlement Agreement void in order to avoid the terms of that agreement.

II. Regardless, even if the Court has authority to determine fairness (which it does not), the evidence shows that Mr. DeMarco's release of his personal claims against Ms. Denny and the other items Mr. DeMarco was willing to give in exchange for a "walk-away" settlement, do have value, value that may be even beyond the $5,100.00 negotiated for the July 2012 Settlement Agreement.

III. Because the September 2012 Settlement Agreement is valid and enforceable, and Mr. DeMarco was denied mediation by the Justice Court, this Court should compel arbitration pursuant to the September 2012 Settlement Agreement.

## STATEMENT OF FACTS

This case originally arose under a Drilling Agreement. PGD (a company owned in part by Patricia Denny and Victor DeMarco) contended that AGSI (a company owned by Mr. DeMarco) owed amounts to PGD under the Drilling Agreement, and AGSI contended that it was required to pay a third party to do what PGD was required to do, namely install pilings, and that it didn't agree to pay for any extras for which it was being billed by PGD (the "Drilling Dispute"). (CR 38-44.)

While the Drilling Dispute was in litigation, a separate dispute arose between Mr. DeMarco and PGD concerning Patricia Denny's operation of PGD and her refusal to provide documents and other information he had requested as a 49% owner of PGD (the "PGD Dispute"). Her refusal to provide the requested records to Mr. DeMarco was a violation of the Texas Business Organizations Code.

On our about June 29, 2012, AGSI and PGD settled the Drilling Dispute for a lump-sum payment by AGSI to PGD of $5,100.00, which settlement was confirmed by way of a Rule 11 Agreement drafted by PGD's counsel and filed with the JP Court. (CR 62.) On or about July 6, 2012, PGD drafted and sent a settlement agreement to AGSI's counsel confirming the Drilling Settlement. (CR 63-64)

On or about July 9, 102, PGD repudiated the Drilling Settlement, retracted the settlement agreement it had sent, and demanded that Mr. DeMarco also agree to release all claims arising from the PGD Dispute as well, which was not part of the Drilling Settlement. (CR 12; CR 75-77.) Mr. DeMarco refused to release his claims.

When PGD finally produced the documents that Mr. DeMarco had been requesting, the documents revealed, among other things, that: (1) PGD had not filed a tax return for 2011, generated any K-1 statements to the owners of PGD for 2011, or obtained an extension from the IRS to file PGD's 2011 tax returns (*see* CR 233); (2) no meetings of the members or managers of PGD had ever occurred; (3) without Mr. DeMarco's knowledge or consent, PGD had hired and been paying Ms. Denny's husband as a "consultant" to PGD; (4) without Mr. DeMarco's knowledge or consent, Ms. Denny had retroactively changed her capital contributions to PGD for 2010 and 2011 into a promissory note she signed on behalf of PGD to her husband; (5) Mr. DeMarco was and always had been a Manager of PGD, notwithstanding representations by Ms. Denny to Mr. DeMarco and others that she was the sole Manager; and (6) PGD is minimally capitalized, and hasn't done any business or made any income since 2011. (CR 79-85.)

Because PGD refused to proceed with the July 2012 Settlement Agreement without Mr. DeMarco's release of claims against Ms. Denny and PGD, and failed to timely produce PGD's books and records to Mr. DeMarco, it is suspected that Ms. Denny knew all along that she was mismanaging PGD and wanted to protect herself from liability for her mismanagement of PGD.

Also, PGD refused to submit its federal tax returns for 2011 unless and until Mr. DeMarco paid the $5,100.00 under the July 2012 Settlement Agreement, which PGD had already repudiated. (CR 70-72.)

PGD's counsel again stated that unless Mr. DeMarco released his claims arising from the PGD Dispute, PGD would set the Drilling Lawsuit for trial. When Mr. Demarco did not agree to release his claims arising from the PGD Dispute, PGD's counsel, having repudiated the Drilling Settlement, set the Drilling Lawsuit for another trial. (CR 78.)

In addition to giving Ms. Denny the release she so desperately wanted, the September 2012 Settlement Agreement was also intended to restore PGD into compliance with state and federal laws. In the September 2012 Settlement Agreement, Mr. DeMarco settled both the Drilling Dispute and the PGD Dispute for a "walk away," meaning that all parties—PGD, AGSI, Ms. Denny, and Mr. DeMarco—would release all

claims against each other, without any payment by any party. (CR 79-85.) Given the irregularities in PGD's books & records produced, the extreme delays in producing such records, and the failure to file PGD's 2011 tax return, Mr. DeMarco also agreed to hire and pay a CPA firm to prepare PGD's tax return for 2011 and balance and rehabilitate PGD's books and records, at his own expense. (CR 81.) The September 2012 Settlement Agreement also included a mediation and arbitration clause to settle any further disputes between the parties. (CR 84.)

I.  **Because the issue of unfairness has not been fully litigated or adjudicated, the September 2012 Settlement Agreement is a valid and enforceable agreement. Thus, the Court cannot unilaterally declare the September 2012 Settlement Agreement unfair and treat it as void by failing to enforce it. Texas Business Organization Code section 101.255 only gives the company or the company's members a cause of action against the "interested governing person" if the company or the company's members believe a contract is not fair. Section 101.255 does not automatically void an unfair contract. Thus, Patricia Denny must assert a cause of action against Victor DeMarco to determine fairness, obtain findings of unfairness, and obtain a judgment declaring the September 2012 Settlement Agreement void in order to avoid the terms of that agreement.**

Texas Business Organizations Code section 101.255 provides, in relevant part:

> §  101.255. Contracts or Transactions Involving Interested Governing Persons or Officers
>
> (a)  This section applies to a contract or transaction between a limited liability company and:
> (1)  one or more governing persons or officers, or one or more affiliates or associates of one or more governing persons or officers, of the company; or
> (2)  an entity or other organization in which one or more governing persons or officers, or one or more affiliates or associates of one or more governing persons or officers, of the company:
> (A) is a managerial official; or
> (B) has a financial interest.

(b) An otherwise valid and enforceable contract or transaction described by Subsection (a) is valid and enforceable, and is not void or voidable, notwithstanding any relationship or interest described by Subsection (a), if any one of the following conditions is satisfied:

(1) the material facts as to the relationship or interest described by Subsection (a) and as to the contract or transaction are disclosed to or known by:

(A) the company's governing authority or a committee of the governing authority and the governing authority or committee in good faith authorizes the contract or transaction by the approval of the majority of the disinterested governing persons or committee members, regardless of whether the disinterested governing persons or committee members constitute a quorum; or

(B) the members of the company, and the members in good faith approve the contract or transaction by vote of the members; or

(2) the contract or transaction is fair to the company when the contract or transaction is authorized, approved, or ratified by the governing authority, a committee of the governing authority, or the members of the company…

(d) A person who has the relationship or interest described by Subsection (a) may:

(1) be present at or participate in and, if the person is a governing person or committee member, may vote at a meeting of the governing authority or of a committee of the governing authority that authorizes the contract or transaction; or

7

(2)   sign, in the person's capacity as a governing person or committee member, a written consent of the governing persons or committee members to authorize the contract or transaction.

(e)   **If at least one of the conditions of Subsection (b) is satisfied, neither the company nor any of the company's members will have a cause of action against any of the persons described by Subsection (a) for breach of duty with respect to the making, authorization, or performance of the contract or transaction because the person had the relationship or interest described by Subsection (a) or took any of the actions authorized by Subsection (d).**

(Emphasis added.) (*See* Appendix 1.)

The goal of statutory construction is to give effect to the intent of the legislature. *Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex. 1994). If language in a statute is unambiguous, this court must seek the intent of the legislature as found in the plain and common meaning of the words and terms used. *Id.* In applying the plain and common meaning of the language in a statute, courts may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning; such implication is inappropriate when legislative intent may be gathered from a reasonable interpretation of the statute as it is written. *Id.*

A plain reading of section 101.255 establishes that unless and until Ms. Denny and/or PGD asserts a cause of action against Mr.

8

DeMarco and obtains a judgment voiding the September 2012 Settlement Agreement, the September 2012 Settlement Agreement, including the arbitration clause within it, is valid and fully enforceable. Texas Business Organizations Code section 101.255 does not declare that an unfair contract with an "interested governing person" is *per se* void or voidable. Rather, section 101.255, in subsection (e), merely provides PGD and Ms. Denny with a cause of action against Mr. DeMarco if they believe that the September 2012 Settlement Agreement is unfair to PGD. Thus, in order to avoid the terms of the September 2012 Settlement Agreement, Ms. Denny and PGD must litigate the fairness issue and obtain a judgment voiding the September 2012 Settlement Agreement.

Because Ms. Denny and PGD have not asserted a cause of action to void the September 2012 Settlement Agreement, this Court must enforce it.

II. **Regardless, even if the Court has authority to determine fairness (which it does not), the evidence shows that Mr. DeMarco's release of his personal claims against Ms. Denny and the other items Mr. DeMarco was willing to give in exchange for a "walk-away" settlement, do have value, value that may be even beyond the $5,100.00 negotiated for the July 2012 Settlement Agreement.**

Here, the Court has no authority to determine whether the September 2012 Settlement Agreement is unfair to PGD. Whether a transaction is fair is a fact question for the jury to determine from all the facts and circumstances of the case. *Wilson Fin. Co. v. State*, 342 S.W.2d 117, 125 (Tex. Civ. App.—Austin 1960, writ ref'd n.r.e.).

However, even if the Court has authority to determine the fact issue of fairness, the facts demonstrate that the September 2012 Settlement Agreement was more than fair to PGD and Ms. Denny. The fact that Ms. Denny repudiated the July 2012 Settlement Agreement (which she and her attorneys negotiated, agreed to and drafted), refused to settle the Drilling Dispute without Mr. DeMarco's release of his claims against her for mismanaging PGD, and was willing to go to trial again, shows that she certainly placed a good deal of value on Mr. DeMarco's release of his claims against her. Also, the fact that PGD (under Ms. Denny's mismanagement) was not going to timely file its tax return was harmful to PGD, since the IRS had not granted an extension to PGD to file its tax return late. (CR 233). Mr. DeMarco released his claims against Ms. Denny and agreed to hire and pay, out of his pocket, a CPA firm to file PGD's overdue tax returns and balance and rehabilitate PGD's books and records in the September 2012 Settlement Agreement.

Thus, under the September 2012 Settlement Agreement, Ms. Denny got the release she so desperately wanted and also got PGD's books in order and in compliance with state and federal laws.

Because the facts demonstrate that the September 2012 Settlement Agreement was more than fair to PGD and Ms. Denny, probably even more fair than a lump-sum payment of $5,100.00 from AGSI, the Court should make no determination that the September 2012 Settlement Agreement is unfair, if the Court even has authority to make such determination (which it does not).

III. **Because the September 2012 Settlement Agreement is valid and enforceable, and Mr. DeMarco was denied mediation by the Justice Court, this Court should compel arbitration pursuant to the September 2012 Settlement Agreement.**

Regarding Footnote 6 in the Court's Opinion, Mr. DeMarco did, in fact, ask the Justice Court to refer the dispute between the parties to mediation. (CR 362, bottom of the page.). However, the Justice Court ignored Mr. DeMarco's request for mediation and denied arbitration. (CR 222-223.) Because the Justice Court made mediation impossible, lack of mediation should not be an additional reason to refuse to compel arbitration.

**PRAYER**

For the reasons above, Appellants Twenty First Century Holdings, Inc. d/b/a American Geothermal Systems, Inc. and Victor DeMarco pray that the Court:

(1)     Vacate or rescind its determination that the September 2014 Settlement Agreement is not fair;

(2)     enter an order compelling the parties to arbitrate any remaining disputes between them; and

(3)     grant Appellants any other and further relief to which they may be entitled.

Respectfully submitted,

WEST SHORT & ASSOCIATES, P.C.

By:     /s/ N. West Short
        N. West Short
        State Bar No. 00788407
        313 West 10th Street
        Georgetown, Texas 78626
        512.864.3911
        512.864.3966 (Fax)
        west.short@westshortlawfirm.com

        Of Counsel:
        Tracia Y. Lee
        State Bar No. 24013021
        TRACIA Y. LEE, P.L.L.C.
        P.O. Box 171022
        Austin, Texas 78717

12

512.814.6167
512.271.6806 (Fax)
tlee@tleelaw.com

**ATTORNEYS FOR APPELLANTS**

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that I drafted Appellant's Motion for Rehearing using Microsoft Word for Mac 2011 using Cambria 14-point font and that the Motion for Rehearing contains 2500 words.

/s/ Tracia Y. Lee
Tracia Y. Lee

## <u>CERTIFICATE OF CONFERENCE</u>

Per local rule 54, I certify that I have conferred with Jason Snell, attorney for Appellees, and he opposes this Motion.

/s/ N. West Short
N. West Short

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via facsimile, e-mail, or e-service, in accordance with the Texas Rules of Appellate Procedure, on this 5th day of May, 2015 upon the following:

The Snell Law Firm, P.L.L.C.
Jason Snell
The Littlefield Building
106 E. 6th Street, Suite 330
Austin, Texas 78701
512.477.5291
512.477.5294 (Fax)

*ATTORNEYS PRECISION
GEOTHERMAL DRILLING LLC*

/s/ N. West Short
N. West Short

No. 03-13-00081-CV

## IN THE COURT OF APPEALS
## FOR THE THIRD DISTRICT OF TEXAS
## AT AUSTIN, TEXAS

**TWENTY FIRST CENTURY HOLDINGS, INC. D/B/A AMERICAN GEOTHERMAL SYSTEMS, INC., VICTOR DEMARCO, AND N. WEST SHORT**

**V.**

**PRECISION GEOTHERMAL DRILLING, L.L.C.**

**FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY, NO. C-1-CV-12-12503, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING**

## APPELLANT'S APPENDIX

ITEM 1       Texas Business Organizations Code § 101.255

No. 03-13-00081-CV

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN, TEXAS

TWENTY FIRST CENTURY HOLDINGS, INC. D/B/A AMERICAN GEOTHERMAL SYSTEMS,
INC., VICTOR DEMARCO, AND N. WEST SHORT

V.

PRECISION GEOTHERMAL DRILLING, L.L.C.

APPELLANT'S MOTION FOR REHEARING

# ITEM 1

Texas Business Organizations Code § 101.255

Vernon's Texas Statutes and Codes Annotated
  Business Organizations Code (Refs & Annos)
    Title 3. Limited Liability Companies (Refs & Annos)
      Chapter 101. Limited Liability Companies (Refs & Annos)
        Subchapter F. Management

V.T.C.A., Business Organizations Code § 101.255

§ 101.255. Contracts or Transactions Involving Interested Governing Persons or Officers

Effective: September 1, 2011
Currentness

(a) This section applies to a contract or transaction between a limited liability company and:

(1) one or more governing persons or officers, or one or more affiliates or associates of one or more governing persons or officers, of the company; or

(2) an entity or other organization in which one or more governing persons or officers, or one or more affiliates or associates of one or more governing persons or officers, of the company:

(A) is a managerial official; or

(B) has a financial interest.

(b) An otherwise valid and enforceable contract or transaction described by Subsection (a) is valid and enforceable, and is not void or voidable, notwithstanding any relationship or interest described by Subsection (a), if any one of the following conditions is satisfied:

(1) the material facts as to the relationship or interest described by Subsection (a) and as to the contract or transaction are disclosed to or known by:

(A) the company's governing authority or a committee of the governing authority and the governing authority or committee in good faith authorizes the contract or transaction by the approval of the majority of the disinterested governing persons or committee members, regardless of whether the disinterested governing persons or committee members constitute a quorum; or

(B) the members of the company, and the members in good faith approve the contract or transaction by vote of the members; or

(2) the contract or transaction is fair to the company when the contract or transaction is authorized, approved, or ratified by the governing authority, a committee of the governing authority, or the members of the company.

(c) Common or interested governing persons of a limited liability company may be included in determining the presence of a quorum at a meeting of the company's governing authority or of a committee of the governing authority that authorizes the contract or transaction.

(d) A person who has the relationship or interest described by Subsection (a) may:

(1) be present at or participate in and, if the person is a governing person or committee member, may vote at a meeting of the governing authority or of a committee of the governing authority that authorizes the contract or transaction; or

(2) sign, in the person's capacity as a governing person or committee member, a written consent of the governing persons or committee members to authorize the contract or transaction.

(e) If at least one of the conditions of Subsection (b) is satisfied, neither the company nor any of the company's members will have a cause of action against any of the persons described by Subsection (a) for breach of duty with respect to the making, authorization, or performance of the contract or transaction because the person had the relationship or interest described by Subsection (a) or took any of the actions authorized by Subsection (d).

**Credits**

Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006. Amended by Acts 2009, 81st Leg., ch. 84, § 44, eff. Sept. 1, 2009; Acts 2011, 82nd Leg., ch. 139 (S.B. 748), § 38, eff. Sept. 1, 2011.

V. T. C. A., Business Organizations Code § 101.255, TX BUS ORG § 101.255
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.